# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs June 23, 2026 at Knoxville

## STATE OF TENNESSEE v. JOHN SKIDMORE, III

**Appeal from the Circuit Court for Benton County**
**No. 24-CR-52      Bruce Irwin Griffey, Judge**

_____

## No. W2025-01231-CCA-R3-CD(C)

_____

Defendant, John Skidmore, III, pleaded guilty to fourth offense driving under the influence ("DUI") and was sentenced to two years suspended to probation after serving 150 days incarcerated. Following a hearing on a probation violation warrant, the trial court partially revoked Defendant's probation, ordered him to serve one year and six months at 100 percent, and extended his probation for an additional year. Upon Defendant's filing a motion to correct an illegal sentence pursuant to Tennessee Rule of Criminal Procedure 36.1, the trial court amended its prior revocation order and fully revoked Defendant's probation. Defendant appeals[1] and argues the trial court failed to place adequate findings on the record to justify its imposition of consequences for Defendant's probation violation. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and STEVEN W. SWORD, JJ., joined.

Kendall Stivers Jones, Assistant Public Defender – Appellate Division (on appeal); Tas Gardner, District Public Defender; and Paul Hessing, Assistant Public Defender (at hearing), for the appellant, John Scott Skidmore, III.

Jonathan Skrmetti, Attorney General and Reporter; Julia A. Johnson, Assistant Attorney General; Neil Thompson, District Attorney General; and Marc Murdaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Defendant filed notices of appeal from the original revocation order and the amended order granting his Rule 36.1 motion. By order of this Court entered on November 20, 2025, Defendant's appeals were consolidated under case number W2025-01231-CCA-R3-CD.

# OPINION

Defendant pleaded guilty to fourth offense DUI on August 5, 2024, and the trial court imposed an agreed-upon sentence of two years as a Range I standard offender suspended to supervised probation after serving 150 days incarcerated. Among the conditions of Defendant's probation were that he would obey applicable laws, "not use intoxicants (beer, whiskey, wine, etc.) of any kind to excess," "not engage in any assaultive, abusive, threatening or intimidating behavior," and not "behave in a manner that poses a threat to others or [him]self." On June 16, 2025, a probation violation report was filed, alleging that Defendant had been arrested and charged with harassment and that he had unpaid fines and court costs.

At the probation revocation hearing, Jacob Mabile testified that Defendant was Mr. Mabile's mother's ex-boyfriend. Mr. Mabile lived with his mother and younger brother, who was disabled. Mr. Mabile's mother "broke it off" with Defendant in March of 2025, because Defendant continued to drink alcohol following his fourth offense DUI conviction. Two or three weeks later, Defendant returned to their home, but "a week and a half after being back, [Defendant] got drunk again and became violent and belligerent." Mr. Mabile's mother told Defendant to leave the house, and Defendant refused. Mr. Mabile said, "[Defendant] was screaming at her, he was cussing at her, he was yelling . . . he got very violent." Mr. Mabile described Defendant as "obnoxious" and "narcissistic" and said that he had "toxic behaviors."

On April 27 and 28, 2025, Mr. Mabile received 538 text messages from Defendant, some of which were "heinous." In the messages, Defendant accused Mr. Mabile and his mother of incest, accused Mr. Mabile, a teacher, of molesting children at his school, "talk[ed] poorly" about their religion and their family, threatened to have Defendant's daughter allege that Mr. Mabile molested her, and threatened to tell the parents of students at Mr. Mabile's school that he was molesting children. Mr. Mabile said the messages caused him "a huge amount of stress" and that his mother had "experienced PTSD since this whole encounter."

Mr. Mabile went to the Jackson Police Department, where officers advised him "just to let it go . . . that [Defendant] should stop once he sobered up." Defendant continued to send messages, "finally sending an explicit image as the last one." Mr. Mabile and his mother sought an order of protection, which the Madison County General Sessions Court granted. When Mr. Mabile met with investigators in Benton County, they advised him "to press charges" because of threats regarding the school "escalated" the case. Defendant was subsequently arrested.

Sergeant Steven Mullins testified that he received a "public service" call from "Miss Kimberly"[2] on July 18, 2025. "Miss Kimberly" complained that Defendant had contacted her through his "Chirp" account at the Benton County Jail. Sergeant Mullins verified that Defendant sent messages to "Miss Kimberly" from the jail and that a valid order of protection existed against Defendant.

Defendant did not call any witnesses or present any other proof.

At the conclusion of the hearing, the trial court observed that Defendant had "a serious drinking problem" and that his behavior was "egregious" and "totally unacceptable." The court noted, "[Defendant] got himself into this." The court found that the State had "clearly" established "by more than a preponderance of the evidence" that Defendant violated the conditions of his probation.

Turning to the consequences of the violation, the trial court noted that Defendant should stay in custody "as long as possible[.]" The court ordered a partial revocation of Defendant's probation and ordered him to serve one year and six months "at [one] hundred percent." The court explained, "I think I can [] short-circuit [] TDOC's policy [] with my direction that I think he needs to serve it day-for-day." The court also extended Defendant's probation for an additional year.

Defendant filed a motion to correct an illegal sentence pursuant to Tennessee Rule of Criminal Procedure 36.1, asserting that the sentence violated Tennessee Code Annotated sections 40-35-306 and -501(a)(3). The trial court agreed that it could not modify Defendant's release eligibility and granted the motion. The court entered an amended revocation order fully revoking Defendant's probation and ordering him to serve the balance of his sentence incarcerated. Additionally, "[f]or the reasons stated at the VOP hearing, and due to the seriousness of the offense, and the danger the Defendant poses to innocent persons due to his continued use of alcohol and operation of motor vehicles," the court further imposed a special condition that Defendant wear an alcohol monitoring device upon release prior to the expiration of his full sentence.

Defendant appeals and asserts the trial court abused its discretion by failing to make adequate findings to justify a full revocation and by imposing the special condition. The State responds that the trial court sufficiently explained its reasons on the record and properly exercised its discretion in determining the consequences of the revocation.

---

[2] While Sergeant Mullins' references to "Miss Kimberly" appear to be Ms. Mabile, nothing in the record specifically clarifies this.

It is within a trial judge's discretionary authority to revoke a defendant's probation upon finding by a preponderance of the evidence that a defendant has violated the conditions of his or her probation. *See* T.C.A. § 40-35-311(d)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). After determining "whether to revoke probation," the trial court must "determine the appropriate consequence upon revocation." *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022).

We review probation revocation decisions under an abuse of discretion standard with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Id.* at 759. Thus, when a trial court articulates sufficient findings on the record to allow for "a meaningful review," its decision is presumed reasonable and, absent an abuse of discretion, will be upheld. *Id.* "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010); *see Dagnan*, 641 S.W.3d at 758. If the trial court fails to articulate its findings on the record, then this Court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or . . . may remand the case to the trial court to make such findings." *Dagnan*, 641 S.W.3d at 758.

Defendant does not challenge the trial court's determination that he violated the conditions of probation. Therefore, a sufficient basis exists to support the revocation of his probation. When, as here, a "probationer commits a non-technical violation, a trial court's authority to impose a consequence for that violation is broad." *State v. Rand*, 696 S.W.3d 98, 103 (Tenn. Crim. App. 2024). The trial court may (1) order confinement for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for the remainder of the unexpired term to a sentence of probation. *See* T.C.A. §§ 40-35-308(c); -310; -311(e)(2).

The determination of the appropriate consequence for the violation examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation. *See id.* The trial court may consider the number of previous revocations, the seriousness of the violation, the defendant's criminal history, the defendant's character, and the defendant's amenability to correction. *See Dagnan*, 641 S.W.3d at 759 n.5. "Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her

effective rehabilitation." *Rand*, 696 S.W.3d at 106 (citing T.C.A. § 40-35-102(3)(C) and *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*).

Although sparse, the trial court's findings clearly indicate that the court based its determination on the seriousness of the violation, the Defendant's character, his criminal history, and his amenability to correction. The trial court implicitly credited the State's witnesses and found Defendant's behavior "egregious" and "totally unacceptable." The court determined that Defendant needed to be "in custody as long as possible" and his probation extended. The court found that Defendant had "a serious drinking problem" and that he "need[ed] to be held accountable to the full extent of the law."

Even if the trial court's findings were inadequate, a de novo review of the record supports the trial court's consequence determination. Defendant pleaded guilty to fourth offense DUI and, while on probation, continued to drink alcohol excessively. He "got very violent" and "belligerent" towards Ms. Mabile and refused to leave her residence. He sent more than 500 messages to the Mabiles, including numerous threats, accusations, and personal attacks. Mr. Mabile testified the messages were "heinous" and caused Ms. Mabile and him extreme stress. Defendant continued to contact the Mabiles after they were granted an order of protection against him.

Defendant asserts that the trial court did not consider whether a full revocation would serve the ends of justice and be in the best interests of Defendant and the public; however, no such finding is required under *Dagnan*. The *Dagnan* Court provided a non-exhaustive list of "[r]elevant considerations" for determining the appropriate consequence for violating probation. 641 S.W.3d at 759 n.5. Moreover, the Court held that a trial court's findings need not "be particularly lengthy or detailed[.]" *Id.* at 759 (citation omitted).

Defendant concedes that the record supports a finding that his use of alcohol "fueled his behavior." He also acknowledges that a court may order an alcohol monitoring device as a condition of probation. Defendant asserts, however, that his behavior was "not so egregious" as to justify the consequences imposed and that he "was not operating a motor vehicle even though he continued to drink alcohol." Tennessee Code Annotated section 40-35-303(d)(12)(A) permits a trial court to require the use of a monitoring device as a condition of probation where "the defendant's use of alcohol or drugs was a contributing factor in the defendant's unlawful conduct . . . ." There is nothing improper about the trial court's imposition of the special condition. The trial court's amended revocation order explained the basis for the added condition was, "[f]or the reasons stated at the VOP hearing, and due to the seriousness of the offense, and the danger imposed to innocent persons due to his continued use of alcohol and operation of motor vehicles[.]" Although no evidence was presented that Defendant operated a motor vehicle while on probation, no

such proof was necessary. While on probation for his fourth DUI conviction, Defendant continued to abuse alcohol, which contributed to Defendant's unlawful harassment of the Mabiles. The trial court imposed an additional condition based on Defendant's "serious drinking problem[.]" The trial court did not abuse its discretion, and Defendant is not entitled to relief.

CONCLUSION

Upon review, we affirm the judgment of the trial court.


_S/Timothy L. Easter_
TIMOTHY L. EASTER, JUDGE